UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:
NEWCO AGGREGATE COMPANY, LLC,
    Debtor.                                    No. 7-03-11787 SF

ROBERT L. FINCH, et al.,
    Plaintiffs,
v.                                                 Adv. No. 05-1065 S

CONSTAR, et al.,
    Defendants.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**
**<u>AFTER TRIAL ON THE MERITS</u>**

    This matter came before the Court for trial on the merits on May 16 and 17, 2007. Plaintiff appeared through his attorney Robert L. Finch. Defendants Constar, Geoff McMahon and Raymond W. White appeared through their attorney Gary B. Ottinger. Defendant Greg Thompson has never been served with process and has never appeared either in person or through counsel. This is a core proceeding. 28 U.S.C. § 157(b)(2)(A), (B), (E), (H) and (K). This bankruptcy case was filed before the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, so those amendments do not apply.

    The complaint has five counts: 1) to avoid a promissory note and security interest for violation of the Limited Liability Company Act, 2) to avoid intentional fraudulent transfer under the Uniform Fraudulent Transfer Act, 3) to avoid a constructive fraudulent transfer under the Uniform Fraudulent Transfer Act, 4)

for breach of fiduciary duty, and 5) to recover property of the estate.

**FACTS**

1.  Duane Hamblin ("Hamblin") and Curtis Slade ("Slade") formed AAA Construction ("AAA") in mid-1998. AAA was in the rock crushing business. By 1999 it was in financial trouble and needed cash. Hamblin agreed to sell his interest in AAA to Geoff McMahon ("McMahon") in late 1999. This deal "went through," and Hamblin received $100,000 plus partial payment of some past debts. Hamblin understood that the plan was for McMahon was to contribute capital to AAA and eventually to form a new company with Slade and transfer AAA's assets to it. Hamblin believed that he was dealing with McMahon. The check he received in payment, however, came from Andrea Corporation. Exhibit F also contradicts Hamblin's belief that he was dealing with McMahon; Exhibit F is the purchase agreement between Andrea Corporation and Hamblin.

2.  Newco Aggregate Company, L.L.C. ("Debtor") was organized in the state of New Mexico on November 23, 1999. Slade was a 49% owner, and Slade believed that McMahon was a 51% owner. In fact, Andrea Corporation was the 51% owner. Debtor is a member-managed LLC. The Debtor had no operating agreements or by-laws. The Articles of Organization were offered but

not admitted into evidence, so the Court can make no findings on what they contain.

Exhibit 3 shows the various ownerships and relationships of other entities that are involved in this case. Although Slade testified that he was the general manager of the Debtor, the Court finds that while Slade did have control over day to day operations, the real control was always in Andrea Corporation. Slade had no signature authority for the accounts and had no access to the books of account, and his only control over the finances consisted of approving bills.

3. On December 1, 1999, Slade, for AAA, and McMahon, for Andrea Corporation, transferred all of the assets into Debtor. Exhibit 2.

4. Greg Thompson was president of Andrea Corporation. Andrea Corporation was a subsidiary of Morningstar Corporation. Morningstar Corporation was the sole property of McMahon. McMahon sold Morningstar Corporation to Constar Company ("Constar"); the date of this sale is not in the record. Constar is a Nevada common law business trust. No individual defendants own, control, manage or direct Constar. No evidence was presented on who the beneficiaries of the trust are. White testified that the trustee is Venture Charters Association, a Nevada corporation, that

acts through its agent Mr. Barrett. According to White, Constar has never made a profit, so there has not been an issue of what to do with the profits.

5.  From the beginning of Debtor's existence, Andrea Corporation and/or Morningstar funded its operations. The testimony of various parties indicated that Debtor almost broke even the first year, but then began a series of years of operating losses. Exhibit 26 shows that by June 1, 2004, Debtor had a net equity of -1.3 million dollars, representing operating losses over the life of the Debtor. Debtor was insolvent on June 1, 2004, but a balance sheet would not show when the Debtor became insolvent.

6.  The parties exerted much effort attempting to prove why there were operating losses, with various accusations going back and forth. However, the Court finds the reasons not relevant.

7.  Exhibits 5, 6 and 7 are a promissory note, security agreement, and UCC1 filing with the state of New Mexico. The promissory note, which is undated, indicates that Debtor, as maker, owed Constar $1.0 million dollars, with interest accruing at 12% per annum. The promissory note is signed "Newco Aggregate Company, LLC, by Greg Thompson, ___ President." Plaintiff argues that because Debtor is an LLC without an operating agreement or bylaws it has no position

of president, and, even if it did, Thompson was not it. Therefore, Plaintiff seeks to set aside this note as unauthorized and incorrectly executed. The Court finds, however, that Thompson was signing as president of Andrea Corporation, and simply forgot to (or did not know he was supposed to) fill in Andrea Corporation on the blank line. Andrea Corporation was 51% owner of Debtor and in control. It was acceptable for Thompson to sign the note on behalf of Debtor. The security agreement pledges all assets, tangible and intangible of Debtor, and the proceeds thereof. The same signature block appears on the Security Agreement, and the Court finds that it was properly executed as well. The UCC1 filing shows that it was filed on September 5, 2002. The Court also finds that these three documents were prepared at or around the same time in late August or early September, 2002. An earlier promissory note appears at Defendants' Exhibit A-1. This note was for $500,000, dated January 21, 2000, and stated that it was to be secured by "granting the primary secured position in the real and chattel assets of NewCo Aggregate Company LLC." Slade denies signing this document, and testified that anyone who claimed he signed it was a liar. However, it was notarized and White testified that Slade did voluntarily sign it in

his presence. Exhibit A-1 was executed at the same time as Exhibit A-2, which Slade admitted signing.

8. Exhibit 8 is a ledger of amounts due to Constar from Debtor. As of August 16, 2002, Debtor owed Constar $1,324,484.65. This exhibit was prepared by White, who testified that it was a complete and accurate record of the checks written, internal invoices and internal charges. The Court finds that Plaintiff did not rebut Exhibit 8 as a substantially correct statement of amounts owed to Constar. Slade testified that the ledger was materially incorrect and that in fact Constar owed $ 2.0 million to Debtor. Aside from his statements, Slade had no documents or other evidence to prove this, however.

9. Plaintiff provided no evidence that Debtor was insolvent in late August or early September, 2002 when Exhibits 5, 6 and 7 were executed or that Debtor became insolvent as a result of Exhibits 5, 6 and 7. Plaintiff provided no evidence that Constar knew or should have known of Debtor's financial condition when Exhibits 5, 6 and 7 were executed. Exhibit 5, the note, did not increase Debtor's liabilities; it just documented an existing debt.

9. Debtor filed its Chapter 11 proceeding on March 6, 2003.

10. On April 1, 2004, the case was converted to Chapter 7 and Plaintiff was appointed Trustee.

Case 05-01065-s    Doc 72    Filed 10/15/07    Entered 10/15/07 16:50:05 Page 6 of 15

11. Neither the Debtor-in-possession or the Trustee filed an action to recover a preference under § 547 or fraudulent transfer under § 548 from Constar by March 6, 2005.[1]

12. Plaintiff proved no damages flowing from the alleged breaches of fiduciary duty. Plaintiff claims that the breaches of fiduciary duty led to all assets being encumbered and that if the note and security agreement were set aside the assets would be free of liens. As discussed below, however, the note and security agreement cannot be set aside.

**CONCLUSIONS OF LAW**

1. There are no grounds under the Limited Liability Company Act to avoid the promissory note and security agreement. Debtor is a member-managed LLC. The note and security agreement were properly executed by the President of Andrea Corporation, the majority member of Debtor.

2. Bankruptcy Code section 544(b)[2] allows the trustee to avoid any transfer of an interest of the debtor that is voidable

---

[1] Section 546(a)(1)(A) generally requires that an action under 547 or 548 be commenced no later than 2 years after the entry of the order for relief.

[2] That section provides, in part: "[T]he trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title."

Case 05-01065-s    Doc 72    Filed 10/15/07    Entered 10/15/07 16:50:05 Page 7 of 15

under applicable law by a creditor holding an unsecured claim that is allowable under Bankruptcy Code section 502. This subsection is read to incorporate the forum state's law of fraudulent conveyance. <u>Grochocinski v. Miller (In re Miller)</u>, 175 B.R. 969, 975 (Bankr. N.D. Ill. 1994). Counts 2 and 3 are therefore governed by New Mexico's version of the Uniform Fraudulent Transfer Act, § 56-10-14 <u>et seq.</u> NMSA 1978 (1996 Repl.), hereafter "UFTA".

3. Under the revised Act [Uniform Fraudulent Transfer Act], fraudulent transfers are broadly separated into two classifications: actual fraud and constructive fraud. ... A fraudulent transfer may be attacked under either theory. Actual or intentional fraud requires a showing of intent while constructive fraud requires a showing of inadequate consideration coupled with insolvency.

   <u>Farstveet v. Rudolph ex rel. Eileen Rudolph Estate</u>, 630 N.W.2d 24, 30 (N.D. 2001).

4. Under the UFTA, "value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied." UFTA § 56-10-17.

5. The Court finds that Debtor received reasonably equivalent value when it granted a lien on its assets to secure the $1.0 million note, considering that over $1.3 million had previously been advanced directly to Debtor or for Debtor's benefit. See <u>Applied Theory Corp. v. Palladin Overseas</u>

Case 05-01065-s    Doc 72    Filed 10/15/07    Entered 10/15/07 16:50:05 Page 8 of 15

Fund, Ltd. (In re Applied Theory Corp.), 323 B.R. 838, 841 (Bankr. S.D. N.Y.), aff'd, 330 B.R. 362 (S.D. N.Y. 2005):

> Here the debtor granted the security interest to the Lenders to secure antecedent debt, which arose from $30 million in funds that the Lenders had advanced to the debtor in the form of unsecured debentures. The security interest did not provide the Lenders with a right to receive anything more than the amount of the money they had provided, and the debtor's liabilities did not increase due to the security interest. The security interest was granted in respect of an antecedent debt-debt that arose by reason of the Lenders having provided the debtor with actual cash in the amount of the debt. ... [T]his Court must here hold, and does hold, that the debtor received reasonably equivalent value in exchange for its granting the security interest.

6. UFTA § 56-10-18 deals with transfers that are fraudulent as to present and future creditors of a debtor. UFTA § 56-10-18 provides:

> A. A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
> (1) <u>with actual intent to hinder, delay or defraud any creditor of the debtor</u>; or
> (2) <u>without receiving a reasonably equivalent value in exchange for the transfer or obligation</u>, and the debtor:
> > (a) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> > (b) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

Page -9-

>B. In determining actual intent under Paragraph (1) of Subsection A of this section, consideration may be given, among other factors, to whether:
>(1) the transfer or obligation was to an insider;
>(2) the debtor retained possession or control of the property transferred after the transfer;
>(3) the transfer or obligation was disclosed or concealed;
>(4) before the transfer was made or obligation was incurred, the debtor has been sued or threatened with suit;
>(5) the transfer was of substantially all the debtor's assets;
>(6) the debtor absconded;
>(7) the debtor removed or concealed assets;
>(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
>(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
>(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
>(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

(Emphasis added.) Subsection (B) lists what are commonly called the "badges of fraud." Wooten v. Kreischer, 162 Ohio App.3d 534, 541, 834 N.E.2d 35, 39 (2005).

Subsection (A)(2) does not apply in this case because Debtor received reasonably equivalent value. Under Subsection (A)(1), the transfer would be fraudulent only if it were made with the actual intent to hinder, delay or defraud any creditor of the Debtor. The burden of proof is on the Plaintiff to show that the transfer was made with this actual intent. Houser v. Rodgers, 204 S.W.3d 836, 842

(Tex. Ct. App. 2006)("The ... creditor has the burden to prove the fraudulent transfer by a preponderance of the evidence.")(Citations omitted.); <u>Sharp Intern. Corp. v. State Street Bank and Trust Co. (In re Sharp Intern. Corp.)</u>, 403 F.3d 43, 56 (2nd Cir. 2005) (The burden of proving actual intent is on the plaintiff.); <u>Wooten</u>, 162 Ohio App.3d at 541, 834 N.E.2d at 39 ("The issue concerning fraudulent intent is to be determined based upon the facts and circumstances of each case, and the burden of proof in an action to set aside a fraudulent conveyance must be affirmatively satisfied by the complainant.")(Quotation and citation omitted.) Plaintiff has not met this burden of proof. Based on the testimony and exhibits presented at trial the Court finds that there was no intent to hinder, delay or defraud Debtor's creditors.

First, the Court will discuss the badges of fraud. As discussed below, the Plaintiff did not prove that Constar was an insider. There was no property to retain possession of after the transfer – the transfer was a lien to secure an antecedent debt; alternatively, Debtor had no control over the lien after the transfer. There is no evidence of whether the obligation was disclosed or concealed generally; Slade testified that he did not know about it until later. There is no evidence that Debtor had been sued or threatened

Page -11-

with suit. The lien did encumber all Debtor's assets. The Debtor did not abscond, and there is no evidence that Debtor removed or concealed assets. The consideration received by the Debtor was reasonably equivalent to the amount of the obligation incurred. There is no evidence of Debtor's solvency at the time of the transfer, or of the transfer occurring shortly before or after a substantial debt was incurred. The business assets were not transferred to a lienor. Altogether, the Court does not find that consideration of the badges of fraud leads to a conclusion of fraudulent intent.

Second, the testimony of Gary Risley, the attorney that drafted Exhibits 5, 6 and 7, tells that they were done on his recommendation to document the cash advances to Debtor and the security agreement that the parties "had a handshake on." He further testified that when the Debtor "discovered" that Slade had allegedly stolen over $600,000 from Debtor, he insisted on finally getting the documents together. The Court finds that the transactions documented by Exhibits 5, 6 and 7 were long-anticipated and prepared in the normal course of business. The January 21, 2000 promissory note further supports this finding because it demonstrates that the debtor-secured creditor relationship existed, or was at least anticipated, from the beginning.

Third, Michael Daniels, chapter 11 counsel for the Debtor testified that he had been aware of Constar's lien during the case, but saw no reason to avoid it; it was obvious that Constar had funded the entire operation of Debtor and had a lien on all assets.

7. UFTA § 56-10-15 provides:

G. "insider" includes:
...
(2) if the debtor is a corporation:
(a) a director of the debtor;
(b) an officer of the debtor;
(c) a person in control of the debtor;
(d) a partnership in which the debtor is a general partner;
(e) a general partner in a partnership described in Subparagraph (d) of this paragraph; or
(f) a relative of general partner, director, officer or person in control of the debtor;
...
K. "relative" means an individual related by consanguinity within the third degree as determined by the common law, a spouse or an individual related to a spouse within the third degree as so determined, and includes an individual in an adoptive relationship within the third degree;

Plaintiff did not prove that Constar is an insider. Debtor is a corporation with 2 members, Slade and Andrea Corporation. Exhibit 3 shows that Andrea Corporation was a subsidiary of Morningstar, but also shows that it was sold to Andrea Thompson, McMahon's daughter. The Exhibit and other evidence does not show when the sale took place. Exhibit 3 also shows that Morningstar Corporation, which was the sole property of McMahon, was sold to Constar, but not

when.  It is possible that at the time Exhibits 5, 6 and 7 were executed Constar had no connection at all with Debtor other than being a creditor.

8. UFTA § 56-10-19 deals with transfers that are fraudulent as to present creditors.  UFTA § 56-10-19 provides:

A.  A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation <u>without receiving a reasonably equivalent value</u> in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.
B.  A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made <u>to an insider</u> for an antecedent debt, the debtor was <u>insolvent</u> at that time and the <u>insider had reasonable cause to believe that the debtor was insolvent</u>.

(Emphasis added).

Subsection (A) does not apply in this case because the Debtor received reasonably equivalent value.  Plaintiff has not met the requirements of Subsection (B) because there is no proof that 1) Debtor was insolvent at the time[3], 2) that Constar was an insider, or 2) that Constar had reasonable cause to believe that Debtor was insolvent.

9. Damages is an element of a cause of action for breach of fiduciary duty.  See <u>Moody v. Stribling</u>, 127 N.M. 630, 638,

---

[3] Plaintiff has the burden of proving insolvency, which must be determined at the time of the alleged fraudulent transfer. See <u>Prarie Lakes Health Care System, Inc. v. Wookey</u>, 583 N.W.2d 405, 414 (S.D. 1998).

Page -14-

985 P.2d 1210, 1218 (Ct. App.), cert. denied, 127 N.M. 389, 981 P.2d 1207 (1999). Plaintiff proved no damages, so the Court need not consider whether any of the Defendants were in a fiduciary capacity with Debtor or whether they breached any duty.

10. Count 5 sought to recover property of the estate on which liens were avoided. Because no liens are avoided, Count 5 will be dismissed without prejudice.

**CONCLUSION**

For the reasons set forth above, the Court finds that counts 1 through 4 of Plaintiff's complaint should be dismissed with prejudice, and Count 5 should be dismissed without prejudice. A judgment in favor of Defendants will be entered by separate document.

_____
Honorable James S. Starzynski
United States Bankruptcy Judge

copies to:

Gary B Ottinger
PO Box 1782
Albuquerque, NM 87103-1782

Robert L Finch
555 E. Main Street
Farmington, NM 87401-2742

Office of the United States Trustee
421 Gold Avenue SW, Room 112
PO Box 608
Albuquerque, NM 87103-0608

Page -15-

Case 05-01065-s    Doc 72    Filed 10/15/07    Entered 10/15/07 16:50:05 Page 15 of 15